Joan E. NOVAK and Arlene Gail Novak *v.* STATE of Arkansas

CR 87-192                                                      741 S.W.2d 243

Supreme Court of Arkansas
Opinion delivered December 14, 1987

*Ohmer C. Burnside*, for appellants.

*Steve Clark*, Att'y Gen., by: *William F. Knight*, Asst. Att'y Gen., for appellee.

Tom Glaze, Justice. Appellants raise one issue on appeal, contending the trial court erred in denying their motion to dismiss for violation of their rights to a speedy trial. The case was certified to the supreme court pursuant to Ark. Sup. Ct. R. 29.1(c) because it involves the interpretation of A.R.Cr.P. Rule 28.3(b).

The important sequence of events necessary to consider in this cause commenced on September 17, 1984, the date the appellants, sisters-in-law, were charged by information for theft of property. Appellants' first hearing was set on September 24, 1984, when they failed to appear, but based upon a telephone call to the court claiming they had experienced car problems, appellants were granted a thirty-five day continuance to October 29, 1984. Appellants made their first appearance on October 29, and each was adjudicated indigent and appointed an attorney. Soon thereafter, November 23, 1984, the regular presiding judge became ill and entered the hospital, where he remained until March 14, 1985, or approximately three and one-half months. Nothing further occurred in the appellants' case until June 15, 1985, when one of the appointed attorneys, Jerry Mazzanti, filed a motion to be relieved as counsel because he had since been appointed to serve as Circuit Judge, 2nd Division, 10th Judicial District, effective July 1, 1985. Apparently, no formal court

action was taken on this motion in 1985.

The state, on February 24, 1986, filed its motion for an extension of time in which to bring the appellants to trial, alleging it was entitled to an additional 110 days because of the delay caused by the judge's illness and a congested docket. Appellants objected, claiming those reasons failed to relieve the state's obligation of providing them with a speedy trial. On March 3, 1986, the court responded by setting a hearing on the state's motion on May 12, 1986, and a trial on the merits of the case on May 14, 1986.

At the May 12th hearing, the court denied the state's motion for extension and continuance. However, at this same hearing, appellants moved to dismiss, noting that the state was required under A.R.Cr.P. Rule 28.1(c) to bring them to trial within eighteen months from when they were charged and that nineteen months, twenty-seven days had passed since they were charged on September 17, 1984. The court rejected the appellants' motion, ruling other excludable periods under A.R.Cr.P. Rule 28.3(c) justified a delay, *viz.*, the judge's illness for three and one-half months and an undesignated time period which resulted from Mr. Mazzanti's withdrawal as counsel for one of the appellants. After denying both the appellants' and the state's motions, the appellants, without waiving their motion to dismiss, moved for a continuance of the May 14th trial date, stating one of the appellants was pregnant and expected to be hospitalized before and on the day of trial. Over the state's objection, the court continued the trial to September 11, 1986, when both appellants were convicted by a jury and each given three-year sentences.

■ It is undisputed that nineteen months, twenty-seven days had passed from the date appellants were charged and the first trial setting on May 14, 1986. Accordingly, the burden is upon the state to show good cause for an untimely delay in the trial. *Chandler v. State*, 284 Ark. 560, 683 S.W.2d 928 (1985). The state, citing *Walker v. State*, 288 Ark. 52, 701 S.W.2d 372 (1986), concedes the thirty-five day continuance given appellants on September 24, 1984, was not excludable because their request did nothing to delay the court in setting a trial date. Also, the state does not argue that any excludable time is justified because of Mr.

Mazzanti's withdrawal as counsel for one of the appellants.[1] *See Williams* v. *State*, 275 Ark. 8, 627 S.W.2d 4 (1982); *Divanovich* v. *State*, 273 Ark. 117, 617 S.W.2d 345 (1981); but *see also, Norton* v. *State*, 273 Ark. 289, 618 S.W.2d 164 (1981). The state's primary contention is that the time of delay caused by the illness of the judge and the congestion of the docket was excludable under A.R.Cr.P. Rule 28.3(b) and (c).

We quickly dispose of the state's reference to docket congestion under Rule 28.3(b) which provides that when the delay is attributable to exceptional circumstances, the court shall state those circumstances in its order continuing the case. Here, the court made no reference by order or its docket that any continuances given were based upon a congested docket resulting from exceptional circumstances, much less when those circumstances might have occurred. *See Harkness* v. *Harrison*, 266 Ark. 59, 585 S.W.2d 10 (1979) and *Shaw* v. *Shaw*, 18 Ark. App. 243, 712 S.W.2d 338 (1986). Thus, the state's argument is narrowed to whether the trial judge's absence for three and one-half months due to illness is an excludable period under Rule 28.3. We hold it is not.

The Supreme Court in *Barker* v. *Wingo*, 407 U.S. 514 (1972) set out criteria by which the speedy trial right should be judged. In doing so, the Court said the rule it was adopting placed the primary burden on the courts and the prosecutors to assure that cases are brought to trial. Stated in other terms, the court further related that a defendant has no duty to bring himself to trial; rather the state has that duty, as well as the duty of insuring that the trial is consistent with due process. *Id.* at page 527. The Supreme Court then proceeded to adopt what it labeled as a balancing test by which a court must be guided when considering speedy trial cases and identified four factors a court should assess in determining a particular defendant has been deprived of his right to a speedy trial: length of delay, the reason for the delay, the defendant's assertion of his right and prejudice

---

[1] We note that no order or docket entry reflected when Mr. Mazzanti was relieved as appointed counsel, but the trial court found at the May 12, 1986, hearing that it had orally directed the other appointed counsel to represent both appellants, thereby substituting him as Mazzanti's replacement. The record fails to reflect the date when the court relieved and substituted counsel.

to the defendant. *Id.* at page 530. The Court said that none of the four factors was either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial, but, rather, they are related factors and must be considered together with such other circumstances as may be relevant. Justice Powell, writing for a unanimous court, stressed that these factors have no talismanic qualities and that courts must still engage in a difficult and sensitive balancing process. *Id.* at page 533. In considering the factor of prejudice, the Supreme Court in *Moore* v. *Arizona*, 414 U.S. 25 (1973) made it clear that *Barker* v. *Wingo* expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial.

Our court, consistent with the principles announced in *Barker*, has placed the burden on the courts and state to assure a defendant receives a speedy trial. In *Norton* v. *State*, 273 Ark. 289, 618 S.W.2d 164, for example, we refused to hold as excludable the period between the recusal of the prosecutor and the appointment of his replacement. We noted the delay caused by the failure to appoint an immediate replacement was not the defendant's fault; instead, we pointed out that it was the court's duty to have appointed a substitute attorney for the state. In still another case, *Harkness* v. *Harrison*, 266 Ark. 59, 585 S.W.2d 10, we rejected the state's argument that a congested docket justified a period of delay to be excludable under Rule 28, and, in so holding, we pointed out that no docket entry reflecting the reason for delay had been entered—a requirement under Rule 28.3(b). In addition, we said that Rule 28.3(b) contemplates that a trial judge will regularly call the docket, and if a case is to be continued beyond the time permitted by law, then the reasons must be stated. Again, our decision in *Harkness* clearly recognizes the court's duty to bring criminal cases to a speedy trial.

While we have not, until now, been confronted with whether a judge's absence due to an illness is good cause for delay, other jurisdictions have, and the weight of authority appears to support the view that the illness or incapacity of a judge does not justify a delay in bringing an accused to trial. Annot., 78 ALR3d 297 (1977). *See Newlin* v. *People*, 221 Ill. 166, 77 N.E. 529 (1906); *State* v. *Jennings*, 195 N.W.2d 351 (Iowa 1972); *People* v. *Broyer*, 394 Mich. 107, 228 N.W.2d 780 (1975); *Hadley* v.

*State,* 66 Wis. 2d 350, 225 N.W.2d 461 (1975).

The Wisconsin Supreme Court case of *Hadley,* 66 Wis.2d 350, 225 N.W.2d 461, is particularly instructive because the court there discussed the speedy trial principles set out in *Barker* and applied them to a situation where the defendant's trial had been postponed because of the judge's illness and a delay in appointing another in his place. In considering the factors or criteria in *Barker,* the Wisconsin Supreme Court, in holding the defendant was denied a speedy trial, found the length of delay was excessive, the delay was attributable to insufficient judicial and prosecutorial manpower and the defendant timely asserted his right to a speedy trial.

We now consider the instant case in light of the factors in *Barker.* Here, the appellants' initial May 14th trial date exceeded the eighteen-month limitation time required in Rule 28.1(c) by about two months, and the delay clearly was not the fault of the appellants. Next, from the record before us, neither the trial court nor the state made any effort to obtain another judge to try the appellants' case, and, indeed, it is unclear whether another judge actually was needed to ensure the case could be tried within the eighteen-month period. The required period, providing for no excludable time, began on September 17, 1984, and ended on March 17, 1986. As noted earlier, the judge's period of absence, claimed by the state as excludable, ended on March 14, 1985. The state, still well within the eighteen-month period, filed its motion for extension on February 24, 1986. Obviously, the judge conceivably could have ruled on the state's motion and tried the appellants' case prior to the limitation period having run. Instead, the trial court set the state's motion to be heard on May 12, 1986, and the trial on May 14, 1986—both dates being outside the eighteen-month period. In sum, the state simply has failed to show why the appellants' case was not tried within the required time by the regular sitting judge, a special elected judge or one on exchange. *See* Ark. Const. art. 7, §§ 21, 22. Finally, we note that the appellants promptly asserted their rights to a speedy trial at the first opportunity after the eighteen-month period had run—at the May 12th hearing set to hear the state's motion for an extension. In sum, the foregoing factors, several of which are set out in the Supreme Court's *Barker* case, suggest a deprivation of the appellants' constitutional right to a speedy trial, and while

appellants do not specifically point to how they were prejudiced by such a denial, they are not required to make an affirmative demonstration of prejudice. *Moore*, 414 U.S. at 26.

In conclusion, in view of the principles and criteria set out in *Barker*, as well as our own rules and case law pertaining to the right of speedy trial, we must conclude the state clearly failed to show in the case at hand how the trial judge's illness justified a delay in bringing the appellants to trial. Having failed to do so, we are compelled to reverse and dismiss this cause.

HICKMAN, J., dissents.